COMMONWEALTH *vs.* CHARLES W. BEAN.

Suffolk.   November 28, 1888. — January 1, 1889.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Oleomargarine — Exposure for Sale — Marks on Package.*

Oleomargarine was exposed for sale in the original package, namely, a tub, the top of the cover of which had been duly marked, as well as the side and bottom, but from which the cover had been removed, disclosing the superficial surface of the oleomargarine without any mark. *Held,* that the terms of the St. of 1886, c. 317, § 1, had been complied with.

COMPLAINT, on the St. of 1886, c. 317, § 1,* alleging that the defendant on December 1, 1887, at Boston, " did expose for sale a certain article, substance, and compound made in imitation and semblance of butter, and not made exclusively and wholly of milk or cream, and containing fats not produced from milk or cream, to wit, a certain article, substance, and compound known as oleomargarine; and the said oleomargarine was then and there contained in a certain tub, and he, the said Bean, did

---

\* This section contains the following provisions: " Whoever, by himself or his agents, sells, exposes for sale, or has in his possession with intent to sell, any article, substance, or compound made in imitation or semblance of butter or as a substitute for butter, and not made exclusively and wholly of milk or cream, or containing any fats, oils, or grease not produced from milk or cream, shall have the words ' imitation butter,' or if such substitute is the compound known as oleomargarine, then the word ' oleomargarine,' or if it is known as butterine, then the word ' butterine ' stamped, labelled, or marked in a straight line in printed letters of plain, uncondensed Gothic type, not less than one half-inch in length, so that said words cannot be easily defaced, upon the top, side, and bottom of every tub, firkin, box, or package containing any of said article, substance, or compound.   The said stamp, label, or mark shall contain no other words.   And whoever, by himself or

not then and there have the word ' oleomargarine ' stamped, labelled, and marked upon the top, side, and bottom of the said tub then and there containing the oleomargarine as aforesaid, against the peace of said Commonwealth and the form of the statute in such case made and provided."

At the trial in the Superior Court, before *Pitman,* J., the following facts were agreed: " The defendant was a member of the firm of W. B. Mendum & Co., and on December 1, 1887, had in the store of said firm a tub of oleomargarine in the original package, marked, according to the statute, upon the side and bottom, but from which the cover, which itself had been marked according to law, had been removed, and the goods exposed for a time, there being no marks upon the tub except those above referred to; the cover was not merely removed at the time of sale and for the purpose of cutting out the oleomargarine, but the oleomargarine was intentionally exposed for sale for a short but substantial portion of time previous to the sale, there being then no mark upon the top of the tub as it was then exposed."

The judge ruled that, upon the above statement, the defendant was guilty of a violation of the law.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

The case was submitted on briefs to all the judges.

*E. B. Powers & S. L. Powers,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. C. Bliss,* Assistant Attorney General, for the Commonwealth.

HOLMES, J.   A majority of the court are of opinion that the exceptions must be sustained.   The oleomargarine exposed for

---

his agents, exposes or offers for sale any of the said article, substance, or compound not in the original package shall attach to the said article, substance, or compound, in a conspicuous place, a label bearing the words, ' imitation butter,' ' oleomargarine,' or ' butterine,' as the article may be, in printed letters of plain, uncondensed Gothic type, not less than one half-inch in length.   And in cases of retail sales of any of said article, substance, or compound not in the original packages, the seller shall, by himself or his agents, attach to each package so sold, and shall deliver therewith to the purchaser, a label or wrapper bearing in a conspicuous place upon the outside of the package the words, ' imitation butter,' ' oleomargarine,' or ' butterine,' and no other words, in printed letters in a straight line of plain, uncondensed Gothic type, not less than one half-inch in length."

sale was in the original package, namely, a tub. The only requirement of the statute which applied to it, while there, was that the tub should be marked upon its top, side, and bottom. St. 1886, c. 317, § 1. The tub was so marked, and therefore the letter of the law was complied with. The statute does not say that the tub must be kept covered all the time. It would be construing a penal statute very strongly against the accused to say that the top of the tub, which was to be marked, was not the cover belonging to the tub, but the superficial surface, whatever it might be, which was exposed for the time being, and therefore the oleomargarine itself when the cover was off. The top of the contents of a tub is not called the top of the tub in the common use of language.

We may assume that to sell a tub full, without the cover, would be a breach of the law, because then the tub sold would not be marked on top, as required. But as we understand the facts, this tub had a cover duly marked, although the cover was not on the tub. The rights of the public would have been preserved if the defendant obeyed the law in making sales, as we must presume that he would have done. If he sold the whole tub at once, he would have put on the marked cover. If he sold a less amount by retail, he would have attached a label. *Exceptions sustained.*